IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 17-433 |
| | : |
| TYLER ELLIS | : |

# ORDER

**AND NOW**, this 22nd day of March, 2021, after considering the motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) filed by the *pro se* movant, Tyler Ellis ("Mr. Ellis") (Doc. Nos. 66, 67), the government's response in opposition to the motion (Doc. No. 74), and the government's exhibit (Doc. No. 75); and after hearings held on the motion via telephone on January 6, 2021 and January 14, 2021, it is hereby **ORDERED** as follows:

1. The motion for compassionate release (Doc. No. 66) is **DENIED**;[1] and

2. The duplicate motion for compassionate release (Doc. No. 67) is **DENIED AS MOOT**.[2]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] On April 27, 2018, Mr. Ellis pleaded guilty to wire fraud conspiracy, access device fraud, and aggravated identity theft. On August 8, 2019, the court sentenced him to 57 months' imprisonment followed by three years of supervised release. J. at ECF pp. 3–4, Doc. No. 65. He has been incarcerated for approximately 35 months and has credit for good conduct time of approximately four months, for a total time served of approximately 39 months. Gov't Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Gov't Resp.") at 3, Doc. No. 74. His expected release date from FCI Fort Dix, the facility in which is he incarcerated, is February 12, 2022. *Id.* While at FCI Fort Dix, Mr. Ellis has committed disciplinary infractions for refusing an order and interfering in the counting of prison personnel, which resulted in restrictions of his commissary and telephone privileges. *Id.*

In the instant motion, Mr. Ellis requests that the court reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def.'s Mot. for Compassionate Release ("Def.'s Mot.") at ECF p. 1, Doc. No. 66. As a preliminary matter, before Mr. Ellis can seek to have the court reduce his sentence under section 3582(c)(1)(A), he must have

"fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or waited 30 days after submitting a request to the warden of his facility. 18 U.S.C. § 3582(c)(1)(A). Here, Mr. Ellis's motion for relief is ripe for review as he has met the exhaustion requirements of section 3582(c)(1)(A), *see* Def.'s Mot. at ECF p. 1 (indicating that he submitted request for compassionate release to Warden of FCI Fort Dix on July 28, 2020), and the government does not challenge that his motion is properly before the court. Therefore, the court can turn to the merits of the motion.

The court may only modify a term of imprisonment under section 3852(c)(1)(A)(i) if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under section 3553(a) warrant a reduction. 18 U.S.C. § 3852(c). The relevant Sentencing Commission policy statement identifies relevant instances that would constitute extraordinary and compelling reasons, such as when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g). *Id.* at § 1B1.13(2). In addition, the Commission states that family circumstances may contribute to a finding of "extraordinary and compelling reasons" when there is "death or incapacitation of the caregiver of the defendant's minor child or minor children," the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* at § 1B1.13 cmt. 1(C).

Congress has never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 994(t). Rather, Congress directed the Sentencing Commission to define the term. *Id.* The Commission did so, but this was prior to the passage of the First Step Act, and the Commission has not updated the policy statement since. *See* U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)-(D).

The Commission's failure to update the policy statement is unimportant to the instant case, as Mr. Ellis has failed to identify any relevant health conditions or such incapacitation of his family. Nonetheless, the court will evaluate his condition within the context of his incarceration at FCI Fort Dix, which is the primary focus of his motion.

FCI Fort Dix is the largest U.S. federal prison in capacity. Gov't's Resp. at 8. As of the government's briefing, it houses 2,745 inmates and has had two significant outbreaks of COVID-19 in May and October with, at one point, 789 reported cases in the entire institution and a total of 530 inmates deemed recovered. *Id.*

Mr. Ellis additionally described the troubling conditions at FCI Fort Dix during the evidentiary hearing on the instant motion, stating that the facility in which he resides is, in fact, a dormitory facility with each room shared between 12 inmates, including himself. He also indicated that inmates are not confined to their rooms as there are no locks, and he stated that there are seven communal areas in which social distancing guidelines are not adhered to in any way. Shared facilities such as bathrooms, computers, and phones are not disinfected between uses. With regard to masks, their use is limited—not all inmates or staff members always wear masks. Mr. Ellis, himself, only has one mask, which he has taken care to launder, but it remains unclear whether other inmates care for their masks at the same level as him. Mr. Ellis additionally alleges that many inmates avoid reporting symptoms to avoid quarantine requirements.

Regarding Mr. Ellis's individual circumstances at FCI Fort Dix, as of the time of the hearings, he had not yet been tested for COVID-19 but did consider himself at a higher risk for it given his employment at the prison as a trash orderly. Because his unit was the only one that had not tested positive for the coronavirus, his unit has become responsible for taking out six other units' trash. Mr. Ellis has been using his own workout gloves and his one cloth mask as personal protective equipment in the execution of his job duties. Despite the obvious risks in his employment, Mr. Ellis reports that he is afraid that if he refuses to do his job, he will be sent to the segregated housing unit, in which he believes conditions would be even worse.

While the conditions at FCI Fort Dix, as described by Mr. Ellis, are a cause of concern, the court is encouraged by the steps the Bureau of Prisons ("BOP") is taking. Specifically, per even Mr. Ellis's testimony, the BOP has continued to isolate individuals tested as symptomatic for COVID-19 and has made an effort to issue face masks to inmates. Additionally, social visits had been suspended. Gov't's Resp. at 5.

Furthermore, the court notes that the BOP's aggressive efforts at FCI Fort Dix had already achieved some success as, of the time of the government's briefing, there had been no COVID-19 related deaths at FCI Fort Dix. *Id.* at 8. Still, the court also understands that how each inmate reacts to the virus will differ, and therefore the court must examine Mr. Ellis's health concerns.

Mr. Ellis is a healthy 34-year-old man. *Id.* at 13. While Mr. Ellis alleges in his motion that he has been breathing "black mold asbestos fungus and lead that has adversely affected his respiratory system," Def.'s Mot. at 1,

2

the court cannot find support for this allegation in his medical records. Indeed, the government notes that while Mr. Ellis had, on July 21, 2020, presented himself to health services claiming he was suffering from shortness of breath, a medical examination did not corroborate that complaint. Gov't's Resp. at 13–14. As such, this court finds that Mr. Ellis does not have any health conditions that would put him at a heightened risk for COVID-19.

Mr. Ellis, however, does not limit himself to an argument regarding his health to support his release from prison. He also contends that the court should direct the BOP to release him now because his father has diabetes, high blood pressure, and has been undergoing hip replacement surgery that requires "immune suppression medication." Def.'s Mot. at 1. As stated earlier, the sentencing commission typically recommends consideration of family circumstances when there has been death or incapacitation of a minor child or a spouse. U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(C). Mr. Ellis has alleged neither. *See United States v. Gaskin*, 15-cr-532, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) (stating that desiring to care for elderly parent does not qualify as extraordinary or compelling reason sufficient for compassionate release). Nevertheless, the court turns to examining factors set forth in section 3553(a).

To grant compassionate release, the court must "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The applicable factors here are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>    . . . [and]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). In addition to these factors, the court must consider all pertinent circumstances and the possible danger to the community. *Id.*

Here, the court's consideration of the section 3553(a) factors, the possible danger to the community, and all other pertinent circumstances demonstrates that the court should not grant Mr. Ellis's release at this time. In this regard, the crimes for which Mr. Ellis is currently imprisoned are of a serious nature. More troublingly, Mr. Ellis's history shows that he is a danger to the community. He committed a sophisticated crime through which he stole over $170,000 and caused harm to innocent individuals. Gov't's Resp. at 2. Moreover, the technological sophistication of his crime suggests that his offense is not of a nature that could be successfully limited by home confinement or GPS tracking.

Finally, Mr. Ellis still has a substantial portion of his sentence remaining. Gov't's Resp. at 3. He is not expected to be released for almost an additional year. *Id.* A reduction of this sentence would result in punishment that would not reflect the seriousness of what he did and would likely degrade the deterrent effect of the sentence. The risk Mr. Ellis poses to the public significantly outweighs the risk COVID-19 poses to him.

At bottom, while the court is sympathetic to Mr. Ellis's less-than-ideal life in FCI Fort Dix, his allegations regarding his health, incarceration, and family circumstances do not rise to level of "extraordinary" or "compelling" as suggested by the Sentencing Commission to support his release. For these reasons, this court denies Mr. Ellis's motion for compassionate release.

---

[2] Doc. Nos. 66 and 67 are the same document.